WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federico Olivas Rios, | CIV 13-0266-PHX-JAT (MHB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Charles L. Ryan, et al., | |
| Respondents. | |

TO THE HONORABLE JAMES A. TEILBORG, UNITED STATES DISTRICT COURT:

Petitioner Federico Olivas Rios, who is confined in the Arizona State Prison Complex-Florence in Florence, Arizona, has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) Respondents filed an Answer (Doc. 10), and despite having an opportunity to do so, Petitioner has not filed a traverse.

## BACKGROUND[1]

On October 20, 2004, the Maricopa County Grand Jurors indicted Petitioner on five counts of molestation of a child (Counts 1, 2, 4-6) and one count of kidnapping (Count 3). (Exh. A.) The Arizona Court of Appeals summarized the facts underlying Petitioner's convictions and sentences as follows:

> In June of 2004, cousins [R.C.] and [S.G.] lived together with their mothers in their Grandmother Esther's home. [R.C.] was eight years old and [S.G.] was

---

[1] Unless otherwise noted, the following facts are derived from the exhibits submitted with Doc. 10 – Respondents' Answer.

1
2
nine years old at that time. Several other extended family members, totaling fifteen people, also resided in this small home. Among them included Rios, Esther's boyfriend.

3
4
5
6
On approximately June 27, 2004, [R.C.] approached her Aunt Carmen, who also resided in the home, and told her that Rios "touched her." Carmen thought that [R.C.] was lying, as [R.C.] had a reputation for untruthfulness. On June 28, [R.C.] visited her Aunt Elizabeth and Grandmother Rosemary from her father's side of the family. During this visit, [R.C.] appeared quiet and out-of-character. Elizabeth asked [R.C.] what was wrong, and [R.C.] confided that Rios had "touched her in the wrong way" and that it had happened more than once.

7
8
9
10
11
12
Elizabeth called [R.C.]'s mother, Rosa, to tell her what the child had said. Rosa responded that [R.C.] was lying and that she would beat the child "until she's black and blue." Rosa denies she made that remark but agrees that she was angry and told [R.C.] that she was in trouble for lying. The next day, [R.C.] was taken to Child Help USA ("Child Help") to be interviewed regarding her statements. At Child Help, police detective Mary Kunkel interviewed [R.C.]. [R.C.] told Kunkel that on one occasion she was in the bedroom with Rios when he put his hand down her pants and touched her buttocks and vagina. During this incident, Rios kissed [R.C.] while holding her behind the head so that she could not leave. [R.C.] also described an earlier occasion during which Rios forced her to touch his penis.

13
14
15
[S.G.] was also taken to Child Help, to be interviewed by Christina Schopen. [S.G.] told Christina that Rios had touched her vagina on two occasions. On one occasion [S.G.] was on the couch when Rios lifted the covers and touched her vagina over her clothes. On the second occasion, Rios touched her buttocks and vagina while she was watching a movie on the bed.

16
17
18
After the allegations had been made, neither of the girls were supported by family members. Multiple family members testified that [R.C.] had a reputation for untruthfulness. Rosa testified that Esther no longer allowed [R.C.] to call her house. [S.G.] was described as someone who would always follow [R.C.].

19
20
21
22
23
Some time after their interviews at Child Help, [S.G.] and [R.C.] recanted their stories. Both claimed that they were lying when they made the allegations and that Rios never actually touched them. A couple of days after the interview at Child Help, [S.G.]'s mother, Priscilla, testified that [S.G.] told Esther that the allegations were not true. [S.G.] claimed that she lied at Child Help because she was scared she would go to jail if she did not lie or that [R.C.] would not be her friend anymore. [R.C.] could not explain why she lied. [R.C.] and [S.G.] continue to claim that the allegations are false.

24
(Exh. S at 2-4.)

25 During trial, the trial court dismissed one of the counts of child molestation – Count

26 4 from the indictment. (Exh. G.) The jury found Petitioner guilty of the remaining four

27 counts of molestation of a child and one count of kidnapping. (Exh. I.) On October 12,

28 2005, the trial court sentenced Petitioner to the presumptive term of 17 years' imprisonment

- 2 -

1  for each count, ordering Counts 1 and 2 to run concurrently, Count 3 to run consecutively to
2  Counts 1 and 2, and Counts 5 and 6 to run concurrently to each other but consecutively to
3  Count 3. (Exh. J.)

4  Petitioner filed a timely notice of appeal on November 1, 2005. (Exh. M.) His
5  appellate counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), finding
6  there was "no arguable question of law that is not frivolous" to raise on direct appeal. (Exhs.
7  N, O.) His counsel also filed a motion for leave to allow Petitioner to file "a supplemental
8  brief *in propria persona*," which the Arizona Court of Appeals granted. (Exhs. P, Q, R.)
9  Petitioner, however, did not file a supplemental brief. (Exhs. S, X.) On August 29, 2006,
10 in a memorandum decision, the Arizona Court of Appeals affirmed Petitioner's convictions
11 and sentences after it "reviewed the entire record for reversible error and [found] none" and
12 determined "reasonable evidence" supported each of the convictions. (Exh. S.) Petitioner
13 did not file a petition for review in the Arizona Supreme Court. (Exh. T.)

14 On June 29, 2009, Petitioner filed a pleading entitled, "Amended Notice of
15 Post-Conviction Relief."[2] (Exh. U.) He raised the following issues: (1) the trial court
16 committed error by imposing aggravated, consecutive sentences based on facts that had not
17 been found by a jury or proven beyond a reasonable doubt, and by imposing lifetime
18 probation; (2) the trial court violated the Double Jeopardy and Due Process Clauses by
19 imposing consecutive sentences and lifetime probation; (3) the trial court violated
20 Petitioner's Sixth Amendment right to confrontation by denying him the opportunity to
21 confront his accusers and cross-examine "any documents"; (4) Petitioner's rights to equal
22 protection and due process were violated because he was sentenced illegally, he did not
23 receive adequate interpretation of the proceedings, the state "appointed ineffective assistance
24 of counsel," and the state engaged in selective prosecution; (5) the prosecutor did not

---

[2] The record is not clear why Petitioner filed an "amended" notice. The record demonstrates that this was the first and only PCR notice he filed. (Exh. W.)

- 3 -

disclose all exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83 (1963); and (6) Petitioner received ineffective assistance of trial counsel.  (Exh. U.)

The state court dismissed Petitioner's PCR petition on October 29, 2009, finding that Petitioner's claims could not be raised because they were untimely pursuant to Arizona Rule of Criminal Procedure 32.4(a) and did not fit into any of the exceptions listed in Rule 32.1(d), (e), (f), (g), or (h).  (Exh. V.)  The court also found that it did not have "jurisdiction to rule on the merits" of Petitioner's petition because he failed to state a cognizable claim when his notice contained only "general allegations, rather than specific facts that would entitle him to Rule 32 relief."  (Id.)  The state court determined that although Petitioner claimed his sentence violated Blakely v. Washington, 542 U.S. 296 (2004), Petitioner "received the presumptive term of imprisonment on all counts so *Blakely* does not apply."  (Id.)  Finally, the court concluded that although Petitioner had indicated that "newly discovered evidence exists that would entitle him to relief and that the failure to timely file was not his fault," he did not provide any facts to support these claims, and, thus, was not entitled to relief.  (Id.)  Petitioner did not file a petition for review in the Arizona Court of Appeals.  (Exh. W.)

On February 5, 2013, Petitioner filed the instant habeas petition.  (Doc. 1.)  In Ground One, Petitioner alleges violations of his Fifth and Sixth Amendment rights, claiming he was not properly represented by counsel because his attorney "failed to obtain a record of [Petitioner's] incompetency," failed to engage in pretrial consultations with Petitioner, and failed to file a motion for a competency hearing.  (Doc. 1 at 6.)  In Ground Two, Petitioner contends that the Fifth Amendment prohibition against double jeopardy was violated and that his attorney did not inform the trial court that Petitioner was incompetent, did not seek a competency hearing, and did not attempt to introduce evidence of Petitioner's incompetency at trial. (Doc. 1 at 7.)  He also asserts violations of his Sixth Amendment rights to a speedy trial, compulsory process, and the effective assistance of counsel; the Eighth Amendment prohibition against cruel and unusual punishment; and his Fourteenth Amendment rights to due process and equal protection.  (Id.)  In Ground Three, he alleges that his due process rights were violated because the trial court judge engaged in ex parte communications with

the prosecutor and "acted in a dual role," the indictment was not specific, "[a] variance occurred," and the trial court "allowed insufficient proportions [sic] that resulted to the enhancement of [Petitioner's] sentence." (Doc. 1 at 8.) In Ground Four, Petitioner raises a due process claim, asserting that the sentencing guidelines were violated due to multiplicity and a transitional sentence. (Doc. 1 at 9.)

On July 18, 2013, Respondents filed an Answer. (Doc. 10.) Petitioner has not filed a traverse despite having the opportunity to do so.

## DISCUSSION

In their Answer, Respondents contend that Petitioner's habeas petition is untimely and, as such, must be denied and dismissed.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a statute of limitations on federal petitions for writ of habeas corpus filed by state prisoners. See 28 U.S.C. § 2244(d)(1). The statute provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

"[T]he period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition." Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999). Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period.

1   28 U.S.C. § 2244(d)(2); see Lott v. Mueller, 304 F.3d 918, 921 (9th Cir. 2002). A state
2   petition that is not filed, however, within the state's required time limit is not "properly filed"
3   and, therefore, the petitioner is not entitled to statutory tolling. See Pace v. DiGuglielmo,
4   544 U.S. 408, 413 (2005). "When a postconviction petition is untimely under state law, 'that
5   [is] the end of the matter' for purposes of § 2244(d)(2)." Id. at 414.

6         A post-conviction petition is "clearly pending after it is filed with a state court, but
7   before that court grants or denies the petition." Chavis v. Lemarque, 382 F.3d 921, 925 (9th
8   Cir. 2004). In Arizona, post-conviction review is pending once a notice of post-conviction
9   relief is filed even though the petition is not filed until later. See Isley v. Arizona Department
10  of Corrections, 383 F.3d 1054, 1056 (9th Cir. 2004). An application for post-conviction relief
11  is also pending during the intervals between a lower court decision and a review by a higher
12  court. See Biggs v. Duncan, 339 F.3d 1045, 1048 (9th Cir. 2003) (citing Carey v. Saffold,
13  536 U.S. 214, 223 (2002)). However, the time between a first and second application for
14  post-conviction relief is not tolled because no application is "pending" during that period.
15  See Biggs, 339 F.3d at 1048; see also King v. Roe, 340 F.3d 821 (9th Cir. 2003) (The
16  petitioner was "not entitled to tolling during the interval between the completion of one
17  round of state collateral review and the commencement of a second round of review.").
18  Moreover, filing a new petition for post-conviction relief does not reinitiate a limitations
19  period that ended before the new petition was filed. See Ferguson v. Palmateer, 321 F.3d
20  820, 823 (9th Cir. 2003).

21        The statute of limitations under AEDPA is subject to equitable tolling in appropriate
22  cases. See Holland v. Florida, 560 U.S. 631, ___, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130
23  (2010). However, for equitable tolling to apply, a petitioner must show "'(1) that he has been
24  pursuing his rights diligently and (2) that some extraordinary circumstances stood in his
25  way'" and prevented him from filing a timely petition. Id. at 2562 (quoting Pace, 544 U.S.
26  at 418).

27        The Court finds that Petitioner's Petition for Writ of Habeas Corpus is untimely. The
28  Arizona Court of Appeals affirmed Petitioner's convictions and sentences on August 29,

- 6 -

2006. (Exh. S.) Petitioner did not file a petition for review in the Arizona Supreme Court. (Exh. T.) Petitioner's conviction became final 30 days later, on September 28, 2006, when the time for seeking review in the Arizona Supreme Court expired. See Gonzalez v. Thaler, ___ U.S. ___, 132 S. Ct. 641, 653-54 (2012) ("[B]ecause [the petitioner] did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired."); Ariz.R.Crim.P. 31.19(a) (requiring petition for review to the Arizona Supreme Court to be filed "[w]ithin 30 days after the Court of Appeals issues its decision"). The statute of limitations began to run on September 29, 2006 – one day after the 30-day period – and expired one year later – on October 1, 2007.[3]

Petitioner did not file his PCR notice until June 29, 2009, after the limitations period had expired. (Exh. U.) "[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed." Ferguson, 321 F.3d at 823. The state court specifically found that the PCR notice was not timely filed; thus, it was not "properly filed" and did not toll the 1-year statute of limitations. (Exh. V.) See Pace, 544 U.S. at 414.

Since Petitioner had until October 1, 2007, to file his Petition for Writ of Habeas Corpus and Petitioner is not entitled to statutory tolling, his pending habeas petition filed on February 5, 2013, is untimely by more than five years.

As the Court has indicated, the Ninth Circuit recognizes that the AEDPA's limitations period may be equitably tolled because it is a statute of limitations, not a jurisdictional bar. See Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in part on other grounds by Calderon v. United States Dist. Ct. (Kelly), 163 F.3d 530, 540 (9th Cir. 1998). Tolling is appropriate when "'extraordinary circumstances' beyond a [petitioner's] control make it impossible to file a petition on time." Id.; see Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (stating that "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule")

---

[3] The actual end date fell on Saturday, September 29, 2007.

(citations omitted). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). A petitioner seeking equitable tolling must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace, 544 U.S. at 418. Petitioner must also establish a "causal connection" between the extraordinary circumstance and his failure to file a timely petition. See Bryant v. Arizona Attorney General, 499 F.3d 1056, 1060 (9th Cir. 2007).

In his habeas petition, Petitioner cites Stewart v. Martinez-Villareal, 523 U.S. 637 (1998) and explains the delay in filing his habeas petition by stating that he was unable "to understand the fundamental principles of the procedural requirements of how, when, and where to execute his claim(s)." (Doc. 1 at 11.) Petitioner also asserts that he is a Mexican nationalist who "does not have any indication what is happening to him due to his medical incompetence," does not "understand [E]nglish," and is illiterate and cannot read or write. (Doc. 1 at 11.) The Court finds, however, that none of these allegations excuse his untimely filing.

Initially, the Court notes that Martinez-Villareal does not discuss equitable tolling and has no application here.[4] In addition, Petitioner has not shown that he has been diligently pursuing his rights. He filed an untimely PCR petition in state court, well over 2 years after his conviction became final and did not file the current habeas petition until well over 5 years after his conviction became final. (Exhs. S-V; Doc. 1.) See Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1012-13 (9th Cir. 2009) (finding petitioner was not diligent in the filing of his habeas petition when his petition was 340 days late, even though petitioner thought he was entitled to statutory tolling for his untimely second state post-conviction petition); Bryant,

---

[4] In Martinez-Villareal, the Supreme Court addressed whether a petitioner's claim under Ford v. Wainwright, 477 U.S. 399 (1986), "is subject to the restrictions on 'second or successive' applications for federal habeas relief in ... 28 U.S.C. § 2244." 523 U.S. at 639. Thus, it has no relation to a petitioner's ability to understand procedural requirements.

- 8 -

499 F.3d at 1061 (determining petitioner "did not pursue his petition with diligence" when he waited several years to seek relief after his last Rule 32 petition was filed).

Moreover, Petitioner has not shown an extraordinary circumstance that prevented him from timely filing his habeas petition. The Ninth Circuit has repeatedly held "that a *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006); see Waldron-Ramsey, 556 F.3d at 1013 n.4 ("[A] *pro se* petitioner's confusion or ignorance of the law is not, itself, an extraordinary circumstance warranting equitable tolling."); Roy v. Lampert, 465 F.3d 964, 970 (9th Cir. 2006) ("It is clear that *pro se* status, on its own, is not enough to warrant equitable tolling."). Nor is it enough that he claims to be illiterate. See Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999); see also Hughes v. Idaho State Bd. of Corrections, 800 F.2d 905, 909 (9th Cir. 1986) (finding petitioner's illiteracy, *pro se* status, and unfamiliarity with the law did not satisfy the cause standard for overcoming procedural default of claims). Thus, Petitioner's lack of knowledge of the relevant procedures because of his *pro se* status or alleged illiteracy is not an extraordinary circumstance warranting equitable tolling.

To the extent Petitioner claims his "medical incompetence" prevented him from timely filing his habeas petition, he has not made any factual showing of medical incompetence, nor explained how his mental incompetence caused his failure to comply with AEDPA's statute of limitations. His conclusory allegations regarding his mental functioning are insufficient to establish equitable tolling. See Lawrence v. Florida, 549 U.S. 327, 337 (2007) (finding claim of mental incapacity was not an "extraordinary circumstance" requiring equitable tolling when petitioner "made no factual showing of mental incapacity"); Ata v. Scutt, 662 F.3d 736, 742 (6th Cir. 2011) (noting "a blanket assertion of mental incompetence is insufficient to toll the statute of limitations" and that "a causal link between the mental condition and untimely filing is required"). Further, there is no evidence of mental incompetency in the record – there was no claim of incompetency in state court or a competency hearing. Cf. Laws v. Lamarque, 351 F.3d 919, 922-23 (9th Cir. 2003) (finding

1 petitioner's claim of mental incompetency warranted an evidentiary hearing in district court
2 when the state record showed "evidence of serious mental illness").

3 Lastly, to the extent Petitioner attributes his failure to file a timely petition to his
4 alleged inability to understand the English language, this claim is likewise unavailing. "[A]
5 non-English-speaking petitioner seeking equitable tolling must, at a minimum, demonstrate
6 that during the running of the AEDPA time limitation, he was unable, despite diligent efforts,
7 to procure either legal materials in his own language or translation assistance from an inmate,
8 library personnel, or other source." Mendoza v. Carey, 449 F.3d 1065, 1070 (9th Cir. 2006).
9 Petitioner has not explained how his alleged inability to speak English prevented him from
10 timely filing his habeas petition, nor has he claimed that he was denied access to materials
11 in his native language, a translator, or assistance in preparing his filings. And, the record
12 demonstrates that in preparing and filing his PCR notice and habeas petition, Petitioner was
13 apparently able to find the assistance he needed. He has not explained any alleged delay in
14 seeking such assistance, or otherwise shown that he was diligent in seeking assistance.
15 Therefore, the Court finds that Petitioner's bare assertion of an inability to understand
16 English does not constitute an extraordinary circumstance.

17 In sum, Petitioner is not entitled to equitable tolling and, accordingly, his habeas
18 petition is untimely.

## CONCLUSION

20 Having determined that Petitioner's habeas petition is untimely, the Court will
21 recommend that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be denied and
22 dismissed with prejudice.

23 **IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of
24 Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH**
25 **PREJUDICE**;

26 **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave
27 to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is

justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 10th day of December, 2013.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge